**WALSH PIZZI O'REILLY FALANGA**

**THREE GATEWAY CENTER**
100 Mulberry Street, 15th Floor
Newark, NJ 07102

T: 973.757.1100
F: 973.757.1090

**WALSH.LAW**

Liza M. Walsh
Direct Dial: (973) 757-1101
lwalsh@walsh.law

March 8, 2024

**VIA ECF**
Honorable Leda D. Wettre, U.S.M.J.
U.S. District Court for the District of New Jersey
Martin Luther King Jr. Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

> Re:   *Axsome Therapeutics, Inc., et al. v. Teva Pharmaceuticals, Inc.*
>        **Case No. 2:23-cv-01695 (MEF) (LDW)**

Dear Judge Wettre:

This firm, together with Goodwin Procter LLP, represents Defendant Teva Pharmaceuticals, Inc. ("Teva") in connection with the above-referenced matter. We submit this joint letter pursuant to L. Civ. R. 37.1(a)(1) on behalf of Teva and Plaintiffs Axsome Therapeutics, Inc. and Antecip Bioventures II LLC ("Plaintiffs" or "Axsome") (collectively, the "Parties") setting forth the Parties' positions concerning Teva's request for leave to amend its L. Pat. R. 3.6(c) Invalidity Contentions. Specifically, Teva seeks leave to amend its Invalidity Contentions under L. Pat. R. 3.7 to add a defense of improper inventorship under 35 U.S.C. §§ 101 and 115 against United States Patent Nos. 10,780,064, 10,925,842, 10,940,124, and 10,966,942 (collectively, "the Asserted Patents"). Relevant excerpts from Teva's proposed amendment to its Invalidity Contentions are attached hereto as **Exhibit A**. The Parties have met and conferred regarding Teva's proposed amendment, and Plaintiffs object on the basis that the amendment is untimely, lacks good cause, and is premature. The Parties' respective positions are set forth below.

Honorable Leda D. Wettre, U.S.M.J.
March 8, 2024
Page 2

**TEVA'S POSITION[1]**

Teva respectfully submits that good cause supports its proposed amendment because it is based on information Teva did not know—and could not have known—when it served its Invalidity Contentions just five months ago on September 15, 2023. Specifically, Teva did not and could not have recognized that the Asserted Patents fail to name the correct inventors until Teva received Plaintiffs' Infringement Contentions and accompanying document production on December 22, 2023. *Cf.* L. Pat. R. 3.6(g), 3.6(h). In short, Plaintiffs' production raised serious doubt as to whether the sole named inventor on the Asserted Patents—Herriot Tabuteau, M.D.—actually invented the subject matter of the 79 claims Plaintiffs have asserted against Teva in this action. The basis for Teva's contention was amplified in the following weeks, as the Parties met and conferred and corresponded regarding the scope of Plaintiffs' document production under L. Pat. R. 3.2(b). After Plaintiffs unequivocally confirmed that they had produced all documents in their possession, custody, and control that might evidence Dr. Tabuteau's purported inventorship of the Asserted Patents, Teva promptly notified Plaintiffs that it intended to seek leave to amend its Invalidity Contentions to include improper inventorship and sought Plaintiffs' consent.

Teva's proposed amendment is proper under L. Pat. R. 3.7. Indeed, the Rule expressly identifies this situation—a Hatch-Waxman defendant responding to information it learns for the first time in a plaintiff's infringement contentions—as supporting good cause to amend. The amendment also would not prejudice Plaintiffs because this case is still in the early stages and fact discovery will not close until February 7, 2025. *See* D.I. 52. Finally, despite Plaintiffs' claims to the contrary, Teva's inventorship defense is proper under both 35 U.S.C. §§ 101 and 115.[2] Thus, Teva should be granted leave to amend its Invalidity Contentions to add improper inventorship.

**The Procedural History Demonstrates Timeliness and Good Cause**

The events leading to Teva's proposed amendment show that Teva's proposed amendment is both timely and supported by good cause. On August 25, 2023, approximately one month after this Court entered a Scheduling Order in this action (D.I. 30), Teva served its first discovery requests seeking, *inter alia*, information and documents regarding the conception, reduction to practice, design, and research and development of the purported invention(s). Plaintiffs responded to these requests on October 2, 2023, several weeks after Teva served its September 15, 2023 Invalidity Contentions. Plaintiffs' responses indicated that documents evidencing conception and reduction to practice would be produced "in accordance with" the Local Patent Rules and the Scheduling Order. When Teva objected to Plaintiffs' attempt to limit the scope of discovery in

---

[1] Teva submits this request informally pursuant to L. Civ. R. 37.1(a)(1) but is prepared to file a formal motion pursuant to L. Pat. R. 3.7 to facilitate resolution as may be needed.

[2] Plaintiffs incorrectly argue that Teva's amendment should be barred because Teva has not pled invalidity under 35 U.S.C. § 115. Teva's pleadings allege that the Asserted Patents are invalid for failure to satisfy one or more of the statutory provisions for patentability under Title 35 of the United States Code, which includes § 115. D.I. 14 at 17, 21-25. Regardless, Plaintiffs' own case law supports amendment to add even ***unpled*** defenses when raised "at a pragmatically sufficient time, and the plaintiff was not prejudiced in its ability to respond." *Mitan v. A. Neumann & Associates., LLC*, No. 08-cv-6154, 2010 WL 4782771, at *3 (D.N.J. Nov. 17, 2010).

this way, Plaintiffs responded that they were "optimistic that the production accompanying Axsome's impending contentions will address most if not all of Teva's purported issues." Ex. G.

Plaintiffs served their Infringement Contentions and accompanying document production on December 22, 2023, pursuant to L. Pat. R. 3.6(g) and 3.6(h). Local Patent Rules 3.2(b) and 3.6(h) require that a Hatch-Waxman plaintiff's infringement contentions be accompanied by the production of "[a]ll documents evidencing the conception, reduction to practice, design, and development of each claimed invention." However, Plaintiffs' production here did not contain anything that might establish when, where, or how Dr. Tabuteau invented—let alone solely invented—the 79 asserted claims. *See* Ex. A at 276-77. Plaintiffs' production consisted of just 133 documents, *none* of which were internal research and development records and *none* of which listed Dr. Tabuteau as a custodian. *Id.* In fact, just 27 documents produced by Plaintiffs contained Dr. Tabuteau's name at all. Far from evidencing Dr. Tabuteau as the sole inventor of the Asserted Patents, these documents identified numerous other individuals who played significant roles in the clinical trials that investigated treatment methods claimed in the Asserted Patents. *Id.*

On January 4, 2024, just thirteen days after receiving Plaintiffs' production, Teva inquired as to whether the production satisfied L. Pat. R. 3.2(b). Ex. C. The Parties met and conferred the following day, and Plaintiffs indicated that they would investigate whether further responsive documents existed. On January 19, 2024, Plaintiffs sent Teva an email stating the following:

> As explained during the parties' January 5 meet and confer, Plaintiffs confirm that they have complied with Local Patent Rule 3.2(b)—i.e., Plaintiffs have produced "[a]ll documents evidencing the conception, reduction to practice, design, and development of each claimed invention, which were created on or before the date of application for the patent in suit or the priority date identified pursuant to L. Pat. R. 3.1(f), whichever is earlier," in Plaintiffs' possession, custody, or control.

Ex. H at 1. Plaintiffs' unequivocal statement that they possessed no further documentary evidence of Dr. Tabuteau's purported sole inventorship crystalized the basis for Teva's contention that the Asserted Patents are invalid for failure to identify the proper inventors under 35 U.S.C. §§ 101 and/or 115. Teva informed Plaintiffs on February 1, 2024, that it intended to seek leave to amend its contentions to assert this additional ground of invalidity and inquired whether Plaintiffs would consent. Ex. B. Upon Plaintiffs' request, Teva provided a redlined copy of the proposed amendment on February 9, 2024, so that Plaintiffs could more fully consider Teva's request. The Parties subsequently met and conferred on February 20, 2024, during which Plaintiffs indicated that they planned to oppose Teva's amendment and suggested a "compromise" in which Teva would delay seeking amendment until it had the opportunity to depose Dr. Tabuteau much later in the case. Teva told Plaintiffs that it would not agree to this proposal because it was inconsistent with the early disclosure requirements of the Local Patent Rules, including the requirement that Teva seek leave to amend its contentions in a timely manner upon learning of additional grounds. Ex. I at 2. The Parties subsequently agreed to raise this issue with the Court via this joint letter.

**Teva's Request for Amendment Should Be Granted Under L. Pat. R. 3.7**

Invalidity contentions in this District may only be amended "by order of the Court upon a timely application and showing of good cause." L. Pat. R. 3.7. However, this requirement "is not

Honorable Leda D. Wettre, U.S.M.J.
March 8, 2024
Page 4

a straitjacket into which litigants are locked from the moment their contentions are served," and "while the Local Patent Rules strive to have a party establish their contentions early on," it is important to recognize that these contentions are preliminary. *Cochlear Ltd. v. Oticon Med. AB*, No. 18-cv-6684-BRM-DEA, 2019 WL 3429610, at *7 (D.N.J. July 29, 2019) (cleaned up). Movants must establish three elements to amend under L. Pat. R. 3.7: (1) the request to amend was timely made; (2) there is good cause to amend; and (3) there is no undue prejudice to the adverse party. *Id.* All three elements are present here.

First, Teva's request is timely. As discussed above, the basis for Teva's improper inventorship defense first arose upon review of the Infringement Contentions and accompanying document production served by Plaintiffs on December 22, 2023. Plaintiffs had not produced any documents in the case until that point, and therefore Teva had no ability to understand the basis for its new defense until it had reviewed Plaintiffs' documents. Critically, Teva had no way to know what role Dr. Tabuteau did (or did not) play in Plaintiffs' internal research and development efforts that resulted in the claimed inventions. When Teva received Plaintiffs' production, which contained very few documents and none evidencing Dr. Tabuteau's inventorship, Teva promptly inquired with Plaintiffs as to the completeness of their production. Shortly after Plaintiffs confirmed on January 19, 2024, that they had no additional documents relevant to conception and reduction to practice that they could produce, Teva notified Plaintiffs of its intent to amend its contentions on February 1, 2024. This application is made just two months after Plaintiffs produced their inventorship documents, and just a few weeks since Plaintiffs confirmed the absence of further documents that might evidence Dr. Tabuteau's claim of sole inventorship. This timeline reflects Teva's diligence and timeliness, and is consistent with other requests that have been deemed timely in this District. *See, e.g., Cochlear Ltd.*, 2019 WL 3429610, at *1 (filed within two months of discovering new information); *Microspherix LLC v. Merck Sharpe & Dohme Corp.*, No. 17-cv-3984-CCC, 2021 WL 2652009, at *1 (D.N.J. June 28, 2021) (filed more than six months after defendant first requested consent from plaintiff to seek leave).

Plaintiffs do not appear to argue that Teva's amendment is untimely because Teva failed to act diligently after receiving Plaintiffs' infringement contentions. Rather, Plaintiffs assert that Teva should have asserted its inventorship defense from the start because there is "no new information warranting amendment that Teva did not have more than a year ago." However, as discussed above, Plaintiffs' infringement contentions, document production, and subsequent correspondence provided substantial new information to Teva. Hatch-Waxman plaintiffs in this District often include in their L. Pat. R. 3.6(h) productions substantial volumes of internal documents (e.g., lab notebooks) demonstrating when and how the named inventors arrived at the claimed invention. Here, however, Plaintiffs produced nothing of the sort regarding Dr. Tabuteau. To the contrary, the documents Plaintiffs did produce raised more questions than answers because they suggested that *someone else* may have invented the claimed subject matter. This, along with Plaintiffs' subsequent confirmation that they had no documents left to produce on inventorship, was critical new information that crystalized Teva's inventorship defense. That some of Plaintiffs' recent information may have conveyed an *absence* of evidence supporting Dr. Tabuteau's purported inventorship does not make it any less "new" to Teva or any less deserving of a response.

Second, good cause exists for Teva's amendment. L. Pat. R. 3.7 makes clear that good cause exists when a party discovers new information relevant to invalidity that it could not have

known when it served its original contentions. Among the exemplary circumstances listed in this Rule is "disclosure of an infringement contention by a Hatch-Waxman Act party asserting infringement under L. Pat. R. 3.6(g) that requires response by the adverse party because it was not previously presented or reasonably anticipated." This is significant because, in Hatch-Waxman suits such as this one, the defendant must serve its invalidity contentions *before* the plaintiff serves its infringement contentions and produces documents. *See* L. Pat. R. 3.6. Here, Teva had no way of knowing the basis for its inventorship contention until after Plaintiffs served their Infringement Contentions and accompanying documents on December 22, 2023—three months *after* Teva served its Invalidity Contentions.

Plaintiffs, however, argue that Teva already had all the information it needed regarding inventorship from the Asserted Patents and their file histories. But these documents merely list Dr. Tabuteau as the sole inventor and do not provide any information as to what role he did (or did not) play in Plaintiffs' R&D process. Indeed, the vast majority of documents produced by Plaintiffs on December 22, 2023, were *non-patent* documents. Plaintiffs recently confirmed the relevance of these non-patent documents to inventorship when they cited 61 of them in an amended response to Teva's interrogatory on conception and reduction to practice. Ex. F at 6-7. Simply put, Teva could not have known before Plaintiffs served their contentions what evidence they would (and would not) use to evidence the inventorship of the Asserted Patents—the documents were entirely in Plaintiffs' possession and thus unavailable to Teva until Plaintiffs produced them. These circumstances establish good cause for Teva's amendment under L. Pat. R. 3.7. *See United Therapeutics Corp. v. Sandoz, Inc.*, No. 12-1617 PGS, 2013 WL 7902649, at *5-6 (D.N.J. Aug. 23, 2013) (finding good cause for amendment based on information gleaned from internal documents produced by plaintiff after service of defendant's original contentions).

Plaintiffs' objection to Teva's proposed amendment as "premature" fares little better. In essence, Plaintiffs argue that Teva will not have good cause to assert improper inventorship until it deposes Dr. Tabuteau and gets an admission that he is not the sole inventor of the Asserted Patents. Not only is this contradicted by Plaintiffs' earlier assertion that Teva's amendment is "untimely," but it is wrong on its face. As discussed above, Plaintiffs' recent infringement contentions, document production, and correspondence represent a new affirmative disclosure that was not previously presented or reasonably anticipated to which Teva is entitled to respond. *See* L. Pat. R. 3.7. Further, the cases Plaintiffs cite do not establish that deposition testimony is *required* to amend contentions. While testimony may in certain circumstances be needed to develop evidence to support a party's proposed amendments, that is not the case here. Plaintiffs' documents and correspondence speak for themselves; Teva does not need to depose Dr. Tabuteau to confirm that there is no documentary evidence to corroborate his claim of sole inventorship.

Third, Teva's amendment would not unduly prejudice Plaintiffs. In determining prejudice, this Court considers "whether permitting the proposed amendments would (1) require [the non-moving party] to expend significant additional resources; or (2) significantly delay the resolution of the dispute. *United Therapeutics*, 2013 WL 7902649 at *6. Neither is present here. Plaintiffs have represented they do not possess any other documents related to the conception and reduction to practice of the Asserted Patents, so Teva's improper inventorship defense will not impose on Plaintiffs any additional discovery burden apart from serving a response to Teva's proposed

Honorable Leda D. Wettre, U.S.M.J.
March 8, 2024
Page 6

amendment. Nor would this amendment delay the resolution of this litigation, since fact discovery will close on February 7, 2025, and no dates have been set with respect to expert discovery or trial.

**Teva's Proposed Improper Inventorship Contention Is Supported by Law**

Plaintiffs spend much of their argument attempting to litigate the merits of Teva's proposed improper inventorship defense. This is both procedurally irrelevant and substantively incorrect.

As an initial matter, Plaintiffs have provided no authority to suggest that the perceived strength of Teva's proposed amended Invalidity Contentions is relevant to whether there is good cause to amend. Neither the text of L. Pat. R. 3.7 nor the precedent of this Court interpreting the "good cause" standard under this Rule impose anything akin to the futility requirement imposed when litigants seek to amend *pleadings* under Fed. R. Civ. P. 15(a)(2). *Cf. Razor USA LLC v. DGL Group, Ltd*, No. CV 19-12939 (JMV), 2020 WL 3605296, at *4 n. 6 (D.N.J. July 2, 2020) (granting motion for leave to amend invalidity contentions and declining to address plaintiffs' futility arguments). This makes sense—invalidity contentions are not pleadings and the purpose of requiring their early disclosure in Hatch-Waxman cases is to "further the goal of full, timely discovery and provide all parties with adequate notice and information with which to litigate their cases." *United Therapeutics*, 2013 WL 7902649 at *2 (citation omitted). Not only has Teva already pled invalidity under 35 U.S.C. generally and § 101 specifically, D.I. 14 at 17, 21, 24-25, but Teva seeks leave to amend now to provide Plaintiffs with advance notice of its inventorship contention such that the Parties can conduct discovery accordingly. If Plaintiffs wish to challenge the merits of Teva's contention, they may seek to do so in a dispositive motion or at trial.

In any event, Teva's inventorship contention has firm legal footing. Plaintiffs imply that Teva's defense is improper because the Asserted Patents are governed by the America Invents Act ("AIA"). However, Courts have repeatedly found that the AIA did not eliminate the requirement to name the correct inventors on a patent and thus that improper inventorship may be alleged as a proper grounds of invalidity of post-AIA patents under 35 U.S.C. § 101 and/or § 115. *See, e.g., Intel Corp. v. Tela Innovations, Inc.*, No. 3:18-cv-02848-WHO, 2019 WL 2476620, at *7 n.5 (N.D. Cal. 2019) (finding that the inventorship requirement "still stands" under the AIA); *Belcher Pharms., LLC v. Hospira, Inc.*, No. 17-cv-775-LPS, 2019 WL 2503159, at *1 (D. Del. June 5, 2019) (finding improper inventorship on AIA patent to be properly pled under §§ 101 and 115(a)); *TwinStrand Biosciences, Inc. v. Guardant Health, Inc.*, No. 21-cv-1126-GBW-SRF, 2023 WL 1860186, at *3 (D. Del. Feb. 9, 2023) (same). Similarly, the USPTO has recognized that "[a]lthough the AIA eliminated pre-AIA 35 U.S.C. 102(f), the patent laws still require the naming of the actual inventor or joint inventors of the claimed subject matter." M.P.E.P. § 2157. The USPTO accordingly instructs its patent examiners to issue rejections under §§ 101 and 115 when a patent application "does not name the correct inventorship" and the applicant has not sought correction. *Id.* Again, to the extent Plaintiffs disagree, the time to decide the merits of Teva's contention is not now.

**Conclusion**

For all these reasons, Teva respectfully submits its request for leave to amend its Invalidity Contentions to assert an improper inventorship invalidity defense under 35 U.S.C. §§ 101 and 115, which should be granted as it is timely, supported by good cause, and does not prejudice Plaintiffs.

Honorable Leda D. Wettre, U.S.M.J.
March 8, 2024
Page 7

**AXSOME'S POSITION**

Teva requests leave to amend its invalidity contentions to assert that Axsome's CEO, Dr. Herriot Tabuteau, is not the proper inventor of the patents-in-suit. Teva's request should not be granted under Local Patent Rule 3.7 because its proposed amendment (1) is untimely, (2) lacks good cause, and (3) is premature.

First, Teva cannot show that it was diligent in pursuing its proposed amendment because it has known that Dr. Tabuteau is listed as the sole inventor of the asserted claims of the patents-in-suit for more than a year—namely, at least since February 9, 2023 when Teva sent a notice letter to Axsome about the patents-in-suit. That notice letter did not contain any inventorship argument. Seven months later, on September 15, 2023, Teva served its invalidity contentions. Teva's contentions also did not contain any inventorship argument. Despite having the exact same evidence of Dr. Tabuteau's inventorship (i.e., at least the intrinsic record of the patents-in-suit) now as it did a year ago, Teva waited until February 1, 2024 to notify Axsome that it sought to amend its contentions. *See* Ex. B (Feb. 1, 2024 Letter from E. Romeo to C. Mattes).

Second, Teva cannot show good cause because there is no newly produced or discovered references or information that would justify its proposed amendment. Teva points to nothing in Axsome's production as providing affirmative evidence that Dr. Tabuteau is not the sole inventor of the patents-in-suit. Accordingly, Teva relies on the exact same evidence of inventorship now that it had when it served its notice letter over a year ago: the four patents-in-suit each naming Dr. Tabuteau as the inventor on their faces, along with one hundred twenty three columns in each specification describing his inventions, six provisional applications, and thousands of pages of prosecution history with the United States Patent Office. Now, just as then, the patent applications themselves evidence Dr. Tabuteau's inventorship ***as of their filing dates***. Teva argues that an alleged ***lack*** of evidence showing Dr. Tabuteau's invention ***before the patent application filing dates***[3] justifies its proposed amendment. Not so. Nothing has changed since Teva filed its notice letter over a year ago.

Third, should Teva eventually proffer actual evidence of any inventorship question (e.g., following Dr. Tabuteau's deposition), that would be the time to discuss amending contentions—not now. Thus, Teva's proposed amendment is premature until it can show newly-discovered evidence casting doubt on Dr. Tabuteau's sole invention of the patents-in-suit.

**The Procedural History Does Not Demonstrate Diligence or Good Cause**

The claimed methods of treating major depressive disorder were invented by Dr. Tabuteau and are recited in the patents-in-suit. Importantly, the patents-in-suit were filed after a change in the law on patent inventorship, memorialized in the "Leahy–Smith America Invents Act" or "AIA" for short. *See* Pub. L. No. 112-29, 125 Stat. 284 (2011). The AIA changed the United States patent system from a "first-to-invent" system to a "first-inventor-to-file" system. *Id.*; *see also Storer v. Clark*, 860 F.3d 1340, 1342 (Fed. Cir. 2017). This change did away with the provisions of 35 U.S.C. § 102(f) and emphasized the filing date of patent applications in determining the

---

[3] As discussed *infra*, Teva's focus on pre-filing actions is misplaced and contrary to the law.

Honorable Leda D. Wettre, U.S.M.J.
March 8, 2024
Page 8

proper inventorship of the claimed subject matter. *Compare* 35 U.S.C. § 102 (2006) *with* Pub. L. No. 112-29, 125 Stat. 284 (2011).

Teva sent Axsome its Paragraph IV notice letter on February 9, 2023, arguing that the patents-in-suit are invalid. Teva did not argue improper inventorship in its Notice Letter. Teva served its invalidity contentions on September 15, 2023. In its contentions, Teva again did not argue that any asserted claim was purportedly invalid because of improper inventorship. However, a year after its notice letter and more than four months after serving its invalidity contentions, Teva informed Axsome on February 1, 2024 for the first time of its intent to seek leave to amend its contentions to add an entirely new invalidity theory—that each of the asserted claims is purportedly invalid for improper inventorship under 35 U.S.C. §§ 101 and/or 115.[4] *See* Ex. B.

Patentees have always been entitled to rely upon the filing date of their patent applications to evidence "constructive reduction to practice" of the claimed inventions. *See Hyatt v. Boone*, 146 F.3d 1348, 1352 (Fed. Cir. 1998). In the pre-AIA system, the only time that patentees have been required to produce documentation from **before** the patent application filing date is if the patentee sought to establish an actual date of invention prior to the filing date, for example if it wanted to get behind a piece of prior art. *See, e.g.*, *Medtronic, Inc. v. Teleflex Innovations S.A.R.L.*, 68 F.4th 1298, 1303 (Fed. Cir. 2023). But here, Axsome is entitled to rely on the filing dates of the patents-in-suit as evidence of the date of Dr. Tabuteau's inventions.

Teva argues in its proposed amended contentions that there is "little [] evidence to indicate that Dr. Tabuteau invented—let alone solely invented—the subject matter of any Asserted Claim." Ex. A at 275. The basis for Teva's argument is that it expected Axsome to produce "laboratory notebooks, invention disclosure forms, or other similar documents" concerning Dr. Tabuteau's inventions along with Axsome infringement contentions. Ex. C (Jan. 4, 2024 Letter from E. Romeo to C. Mattes). But, for more than a year, Teva has already had ample evidence of Dr. Tabuteau's inventions as of the filing dates of the patents-in-suit in the form of the patents themselves and their prosecution histories. Axsome produced copies of each of these items with its infringement contentions as required by the Local Patent Rules, along with copies of relevant clinical trials that Dr. Tabuteau oversaw as Axsome's CEO. As Axsome explained in its responses to Teva's document requests and confirmed in response to Teva's January 4, 2024 letter, Axsome has produced all non-privileged documents regarding the conception, reduction to practice, design, and research and development of the claimed inventions. *See, e.g.*, Ex. D (Axsome's Oct. 2, 2023 Responses and Objections to Teva's First RFPs) at 49-51; *see also* Ex. B at 1. At bottom, Teva

---

[4] Notably, 35 U.S.C. § 115 does not appear in Teva's Answer and Counterclaims in this action and therefore cannot be included in its proposed amendment. *Mitan*, 2010 WL 4782771, at *3 ("An affirmative defense which is neither pleaded as required by Rule 8(c) nor made the subject of an appropriate motion under Rule 12(b) is waived.") (quoting *Systems, Inc. v. Bridge Elec. Co.*, 335 F.2d 465, 466 (3d Cir. 1964)). Contrary to Teva's assertion (*supra* 2 n. 2), despite naming 11 statutory provisions and 3 judicial bases of invalidity, Teva's Answer is **completely devoid** of any mention of § 115. *See* ECF No. 14 at 17, 21-25 (asserting invalidity based on "§§ 101, 102, 103, 111, 112, 116, 135, 251, 256, and 287, and/or the doctrine of obviousness-type double patenting, and/or judicially created doctrines of invalidity or unenforceability"). Teva should not be permitted to belatedly backfill its insufficient pleadings at this stage.

Honorable Leda D. Wettre, U.S.M.J.
March 8, 2024
Page 9

fails to argue that anything in Axsome's production affirmatively evidences that Dr. Tabuteau is ***not*** the inventor. Instead, Teva argues its amendment is justified because it allegedly ***expected*** that Axsome would produce something new.

The parties subsequently met and conferred in an attempt to avoid a waste of the parties' and the Court's time and resources. Axsome suggested that Teva wait until after Dr. Tabuteau's deposition so that it could consider its proposed amendment in view of the testimony of the inventor. Teva rejected Axsome's proposal and instead opted to raise its request for leave to amend with the Court via this joint letter.

### Teva's Request for Leave to Amend Should Not Be Granted Under L. Pat. R. 3.7

The Local Patent Rules are "designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *King Pharms., Inc. v. Sandoz, Inc.*, C.A. No. 08-5974-DEA, 2010 WL 2015258, at *4 (D.N.J. May 20, 2010) (citations and quotations omitted), *aff'd* 2010 WL 4789950 (D.N.J. Sept. 8, 2010). "Distinguishable from the liberal standard for amending pleadings, the philosophy behind amending claim charts is decidedly conservative . . . ." *Id.* (citations and quotation marks omitted). Under Local Patent Rule 3.7, amendments to contentions "may be made only by order of the Court upon a timely application and showing of good cause." L. Pat. R. 3.7 (emphasis in original).

<u>First</u>, Teva cannot show diligence because there is no new information warranting amendment that Teva did not have more than a year ago when it sent its notice letter to Axsome. Teva knew that Dr. Tabuteau is listed as the sole inventor of the asserted claims of the patents-in-suit since at least before February 9, 2023 when it sent Axsome its notice letter. Teva's September 15, 2023 invalidity contentions also lacked any allegation of improper inventorship.[5] Teva claims that "the basis for [its] improper inventorship defense first arose upon review of the Infringement Contentions and accompanying document production served by Plaintiffs on December 22, 2023." *Supra* 4. But Axsome's document production is irrelevant to Teva's proposed amendment because the patents-in-suit are governed by the AIA's first-to-file rules. Therefore, the specification and claims themselves support Dr. Tabuteau's inventorship. *See Ethanol Boosting Sys., LLC v. Ford Motor Co.*, C.A. No. 19-196-CFC, 2019 WL 6307680, at *2 (D. Del. Nov. 25, 2019) ("[T]he filing of a patent application is a constructive reduction to practice of the invention disclosed therein. ***Thus, the inventor need not provide evidence of either conception or actual reduction to practice when relying on the content of the patent application***.") (emphasis added; internal citations and quotation marks omitted); *Hyatt*, 146 F.3d at 1352 (same). Axsome's December 2023 document production would be relevant only to antedating the filing date of the patents, but that issue is not relevant here. *See, e.g.*, *Medtronic, Inc*, 68 F.4th at 1303. And, the length of Teva's delay in seeking to amend its contentions has previously been found to show a lack of diligence. *See, e.g.*, *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1367 (Fed. Cir. 2006) (delay of 3 months shows lack of diligence/untimeliness); Ex. E (*Prometheus Labs. Inc. v. Roxane Labs.,*

---

[5] Teva alleges that it previously pled a lack of patentable subject matter under § 101 and thus it is somehow proper for it to plead improper inventorship now. *See supra* 6. That argument is entirely irrelevant. Teva's previous § 101 argument has nothing to do with its new inventorship defense. Ex. A, at 273-75.

*Inc.*, C.A. No. 11-1241-PS, ECF No. 122 (D.N.J. Mar. 12, 2012)) at 17-18 (delay of four and a half months shows lack of diligence/untimeliness).

The case law has uniformly held that timeliness is based on the discovery of **new** information that was not previously available to a movant, despite the movant's diligence. *See Merck Sharp & Dohme Corp. v. Sandoz, Inc.*, C.A. No. 12-3289-LHG, 2014 WL 997532, at *3 (D.N.J. Jan. 6, 2014). Teva's own cases clearly demonstrate this law. In *Cochlear Ltd.*, 2019 WL 3429610, the Court allowed Cochlear to amend its contentions after obtaining nonpublic evidence supporting its amendment during discovery. The Court further noted that Cochlear, to the extent it could have suspected a basis for its amendments earlier, "exercised reasonable prudence in waiting to receive evidentiary support for [its] assertion . . . before seeking leave [to amend]." *Id.* at *9, *13. Similarly, in *Microspherix LLC*, 2021 WL 2652009, the Court allowed Merck to amend its contentions based on (1) a prior art search conducted with a patent issued during an IPR-generated stay, and (2) arguments raised during the IPR proceedings. Merck moved to amend its contentions one week after the IPR proceedings concluded, and the Court found the amendment timely based on Merck's diligence. *Id.*

Here, Teva has discovered no new information that could form the basis for its amendment. Teva has long had access to evidence of Dr. Tabuteau's inventorship, which is located within the patents-in-suit and related file histories. *See Ethanol Boosting*, 2019 WL 6307680, at *2 ("[T]he filing of a patent application is a constructive reduction to practice of the invention disclosed therein. Thus, the inventor need not provide evidence of either conception or actual reduction to practice when relying on the content of the patent application.") (internal citations and quotation marks omitted); *Hyatt*, 146 F.3d at 1352 (same). Specifically, the patents' specifications disclose Dr. Tabuteau's inventions and provide Teva with notice of the type of information that supports them. Teva cannot credibly allege that receiving the underlying documentation was somehow surprising or new—let alone sufficiently so to warrant amendment. In other words, Teva no new evidence regarding Dr. Tabuteau's inventorship now, that it did not have (a) a year ago when it sent its notice letter, or (b) five and a half months ago when it served its invalidity contentions.

<u>Second</u>, Teva argues it has good cause for amendment under Local Patent Rules 3.7/3.6(g) because Axsome's infringement contentions require "response by the adverse party because it was not previously presented or reasonably anticipated." *Supra* 5. This argument is inapplicable because Axsome did not disclose any document or contention calling into question Dr. Tabuteau's inventorship. The Local Patent Rules and case law address situations where a patentee discloses a new theory or affirmative evidence that necessitates amendment. *See, e.g.*, *United Therapeutics Corp.*, 2013 WL 7902649 (citing L. Pat. R. 3.7 and 3.6(g) and allowing amendment where Sandoz discovered new prior art based on treprostinil synthesis disclosed in plaintiff's document production). Here, Teva can point to no such new theory or affirmative evidence.

Additionally, Teva mistakenly argues that it "had no way of knowing the basis for its inventorship contention until after Axsome served their Infringement Contentions and accompanying documents on December 22, 2023." *Supra* 5. As stated previously, Teva had the exact same evidence of Dr. Tabuteau's sole inventorship of the claimed inventions prior to filing its invalidity contentions. Now, just as then, the file histories and specifications evidence Dr. Tabuteau's invention. Axsome's production of all non-privileged documents regarding the conception, reduction to practice, design, and research and development of the claimed inventions

Honorable Leda D. Wettre, U.S.M.J.
March 8, 2024
Page 11

has no bearing on Teva's proposed improper inventorship amendment. Further, contrary to Teva's assertion, "laboratory notebooks, invention disclosure forms, internal memoranda, draft clinical trial protocols, or other contemporaneous research and development records" are not required to demonstrate inventorship of methods of treatment. Ex. A at 276. Teva's reference to "Plaintiffs' R&D process" (*supra* 5) incorrectly conflates the process for the **FDA approval** of Axsome's Auvelity product with the ***invention*** of the patents-in-suit. Moreover, authors on a ***clinical trial report*** are entirely unrelated to the rules for inventorship of ***patent claims***. Therefore, that Axsome did not produce the materials Teva mistakenly expected cannot in and of itself underly good cause.

If Teva believes that the patents-in-suit and their file histories are not sufficient to show Dr. Tabuteau's inventorship, it could have made its inventorship argument in its original invalidity contentions because it had the exact same evidence then as it does now. Teva's legal support, *United Therapeutics*, does not support Teva's proposed amendment. In that case, the Court permitted Sandoz's proposed amendment based on a ***new prior art reference*** affirmatively produced by the patentee. *United Therapeutics*, 2013 WL 7902649, at *5. Here, there is no new reference or affirmative evidence that could justify an amendment.

Third, Teva's proposed amendment is premature. As explained above, Teva has provided no affirmative evidence whatsoever of improper inventorship. Teva contends that it did not receive certain evidence it anticipated, but that is wholly distinct from even Teva's own recitation of the requirement for good cause—namely, that a party *made* an affirmative disclosure that was not previously presented or reasonably anticipated. An appropriate time to request leave to amend to add an improper inventorship defense would be if, during Dr. Tabuteau's deposition, he were to provide testimonial evidence that he is not the sole inventor of the claimed inventions. *See, e.g.*, *In re Certain Consol. Roflumilast Cases*, C.A. No. 15-3375-FLW, 2017 WL 3816542 (D.N.J. Aug. 31, 2017) (allowing defendants to amend invalidity contentions with improper inventorship defenses based on depositions that were necessary to reveal, develop, or confirm that sufficient evidence exists); *Elec. Scripting Prod., Inc. v. HTC Am. Inc.*, C.A. No. 17-5806-RMI, 2021 WL 2530210, at *1 (N.D. Cal. June 21, 2021) (defendant properly waited to secure corroborating deposition testimony before seeking leave to amend); *see also Schwendimann v. Stahls', Inc.*, 510 F. Supp. 3d 503, 515 (E.D. Mich. 2021) (denying plaintiffs' request for leave to amend as premature in the event that "additional facts" relating to the patents-in-suit become known through discovery). Contrary to Teva's strawman (*supra* 5), Axsome is not arguing that Teva need obtain silver-bullet deposition testimony in order to amend its contentions—merely that Teva cannot meet its burden under Local Patent Rule 3.7 without affirmative evidence. There is none here, and Teva points to no case law suggesting that an alleged *lack* of evidence is sufficient.

As Axsome explained during the parties' meet and confer, should Dr. Tabuteau provide such testimony, Teva would then be able to move to amend under Local Patent Rule 3.7. However, it is far more likely that, following Dr. Tabuteau's deposition, it will be all the more apparent that there is nothing improper about his sole inventorship, and Teva's belated requests were nothing but a waste of the parties' and Court's time and resources.

**Conclusion**

For the foregoing reasons, Axsome respectfully requests that the Court deny Teva's request for leave to amend its invalidity contentions.

Honorable Leda D. Wettre, U.S.M.J.
March 8, 2024
Page 12

Respectfully submitted,                                  Respectfully submitted,

*s/ Charles M. Lizza*                                    *s/ Liza M. Walsh*

Charles M. Lizza                                         Liza M. Walsh
*Counsel for Axsome*                                     *Counsel for Teva*


cc:     All Counsel of Record (via ECF and Email)